On the baseball court, on Street 516, on the bench, Keith, v. Keith Smith, while riding a fast-paced machine, he makes his dive, trying to find the losses for the opponent. Good morning, Your Honors. Before I get started, I'd like to reserve three minutes for rebuttal. May it please the Court, Myron Watson representing the Appeals Court for Bobby Lee Cutts Jr. We contend that the District Court should not have denied the writ of habeas for Bobby Cutts. Specifically, we raised with the District Court that the petitioner's Sixth Amendment right for fair and impartial trial was denied in light of the fact that the trial court judge in this case allowed a juror who had participated in the search of the victim in this case to serve. We believe that this situation falls in that exceptional circumstance, that it is highly unlikely that a person who had this type of emotional attachment to the victim by actually volunteering her time in this case would be fair and impartial. So you're only raising the implied bias, you don't also have an actual bias argument? You're not also making an actual bias argument? We're not making an actual bias argument in the sense that we believe that because of the circumstance it falls in that exceptional case, and we believe irrespective of what the government believes that there has to be a rumor hearing to make that determination whether or not there was actual bias in the case. Because there have been other instances in which the Supreme Court looked and said, hey look, looking on the face of this situation, we should in fact reverse the conviction. There was a case involving two deputy sheriffs who were witnesses in a trial that in fact was a part of the jury sequestration, even though it was insisted that their presence had no impact on the verdict. But in that particular situation, the court said just looking at it, you would say that it was painfully unfair. Likewise, there was another case involving where prospective jurors in a second trial saw the announcement of a verdict in the first trial that the petitioner was guilty. In that particular circumstance, the U.S. Supreme Court said, hey, the bias was clear and the person should in fact be granted a new trial. Mr. Watson, so this case obviously is before us under the AEDPA, which has a different analytic framework in essence from direct appeals as you know and have briefed. With respect to this implied bias, juror bias doctrine, do you have to establish that it is still viable that there is a Supreme Court precedent that makes it clear that that's a viable doctrine? Is that something that you would need to establish for relief here because of the AEDPA deference that we give to state court judgments? Yeah, I think that goes to the heart of the matter in a sense that the standard in which the court has to evaluate whether or not this is clearly established federal law. But I know that the government tends to suggest that because there have been discussion about the viability of a particular implied bias doctrine does not mean that there's an abrogation of that concept. And even under the law that there is some deference that is afforded to the district court when evaluating whether or not a clearly established federal law had been violated, there is a second component to that about an unreasonable determination of the facts that resulted in that decision. And we believe that this particular situation falls in that purview where you have a juror who has demonstrated outwardly an attachment to the victim's case. If the converse were considered, if in fact there was a juror who had volunteered her services to assist the petitioner or the defendant in this case, I think that if you're looking through that construct and you said whether or not that person should in fact sit in a trial as an impartial juror, I think that would raise the same element of concern as it would for a person who had personally participated with regard to a search of the victim for a period of nine days. So what is it about a juror having volunteered to be part of a search for a victim that would somehow result in, I don't know if it would be actual bias, but let's say implied bias with respect to the defendant. I think you referenced an attachment or something of that nature. What would that be in your view? I believe it's an emotional attachment. Because I know there was a case cited by the government where a county coroner was in fact participating in a search in a professional capacity. But when you have a person who volunteers their time to someone whom they don't know, that surely goes beyond that expectation that the person would be impartial. But it doesn't necessarily imply a concern about the particular individual. I mean, it may just as easily imply just kind of a good citizen concern about any person who's missing, right? That could be an interpretation of that, and I'm not being dismissive of that. But I tend to think that when you're talking about the everyday person who has their own family, who have their own priorities, who have their own job, that when they tend to go outside of that realm for someone whom they don't know, that would suggest strongly that there is an emotional attachment to that. The record is devoid of anything that might not just help us with actual bias, if that were an issue, but that would help us know whether the circumstances are such that it would be reasonable to imply bias if such a doctrine does in fact represent clearly established Supreme Court precedent, right? We believe that it does exist, and we believe that even though the record may not be very specific as to the particular facts of her participation, but we think it falls in the purview of cases that the U.S. Supreme Court had decided with regard to the sheriff deputies who were testifying in a case, and even though they had no verbal contact about the case involving sequestered jurors, but the U.S. Supreme Court said, look, this is indeed a presumed situation. What about this distinction between the sheriffs and this situation? You know, that's a situation in which the sheriffs were somehow arguably elevated over other witnesses in the eyes of the jury because they were given positions of trust by the court, official positions in connection with the trial. That's kind of an inherently different situation from the one we have, right? Well, I would respond to that. I mean, I know your interest is in arguing the contrary. Right. So probably that's a— But I want to touch on another point because you did make a good point, that deputy sheriffs do have an elevated position with the court, but it goes to this impression was that the deputy sheriff's testimony really didn't go to the heart of the case, but they were, in fact, witnesses in a case, and the court said that irrespective of that fact that they felt that their testimony didn't have a major impact, it's just that issue of what it looked like. It looked as if there was unfairness inherent in a guilty verdict in which two government witnesses testified in a case and they were in contact with a sequestered jury. So I want to analogize that situation where you have a juror who had involved themselves with regard to the actual participation of the surgeon assisting the family to find the victim in this case, is that when you look at it on his face, a red flag should come up and say, well, that person has demonstrated an allegiance to a particular side. Well, I mean, I agree completely with you that if you were a trial judge, it would be imprudent to leave this person on the jury, if nothing else. However, unfortunately, our test is not what would the prudent trial judge do. Help us with the case law that you would suggest is most on point or most analogous to your situation. I know we've got the Johnson v. Obama, our 2005 decision that kind of indicated that habeas relief was foreclosed because the implied bias doctrine might not be viable after Smith. What case would you point us to that you say is sufficient to show established law that the implied bias doctrine is alive and well? Well, I can't really cite a case in this circuit. I would ask the court to look at the U.S. Supreme Court and analyze those cases in the context of this implied bias doctrine because there has been some cases that have questioned the viability and the vitality of it. And yet some of the cases that have just implied that the implied doctrine continues, but just is a narrow exception. That's correct. So there is no disagreement. The court is right in saying that there has been some questions about the viability and the vitality of it. In what cases do we apply that concept? And how does that survive a pre-deference? I believe that it survives if you look at the U.S. Supreme Court cases, if you look at Irving v. Dow when you had a situation where there were 8 out of the 12 jurors had presumed that the defendant was guilty and that the court looked at that construct along with the other factors in the case and said, look, we have a problem here based on this presumptively jury that was not fair and impartial. Which then becomes conclusive. Yes. So it's a conclusive presumption. Right. And so that's what I understand that the Sixth Circuit in handling certain cases that have been different from this one would bring some question. But I think this particular case, the factual circumstances of this case lend itself to that implied doctrine as has been applied to those cases that have been decided by the U.S. Supreme Court. Thank you. Thank you, Mr. Watson. Your initial time has expired, but you'll have your rebuttal time. Thank you very much. Kerridge. May it please the Court, my name is Paul Kerridge and I represent the appellee, Warden Smith. Petitioner contends that the District Court erred in failing to vacate his conviction based on his implied jury bias claim. This Court should affirm the District Court decision to dismiss Cutts' claim because the Court correctly applied AEDPA deference and determined that the Ohio Court's decision was not contrary to clearly established federal law. This Court could affirm for any one of four reasons, though it seems the Court is most focused on the deference standard, so let's start there. The vitality of the implied bias doctrine has been so questioned that it cannot be considered clearly established federal law. In Smith v. Phillips, the U.S. Supreme Court stated that the Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias. That's a 1982 case. The Turner v. Louisiana case with the sheriffs was a 1965 case, if memory serves me correctly. So, Smith in abrogating Rema also essentially abrogated Turner v. Louisiana. In Smith is the case, isn't it, where Justice O'Connor wrote a separate concurrence saying something to the effect that she assumes that the implied bias doctrine remains viable or in effect for certain situations or something like that? That's correct, Your Honor. In the situation where the juror is an employee of the prosecuting agency, in a situation when the juror is a close relative of one of the participants in the trial or criminal transaction, plainly neither of those are the case here. And in a situation where the witness was somehow involved in the criminal transaction. So you would say that the doctrine does survive just in very limited circumstances? No, Your Honor. It is Respondent's contention that it does not survive in any way, but some courts, I believe it's four of the eight circuit courts, have found that it remains viable in those three limited situations. What about McDonough Power Equipment v. Greenwood? That's a 1984 case, two years after Smith. And I think, let me get it straight, three opinions, right? None of them a majority, but two of the opinions refer to the implied bias doctrine as a rare but viable doctrine. And by my count, those two opinions have five justices. So why would that not establish that the implied bias doctrine still is in existence? Your Honor, it was my understanding that the portion of McDonough cited is from a concurring opinion. It is. But there are five justices concurring in two separate concurring opinions, which gives you a majority of the court saying that the doctrine is viable. Assuming, arguendo, that then the doctrine is still viable under those circumstances, this isn't a viability of the doctrine case. This is the doctrine clearly established federal law case. And since a number of courts, including this court, since the 1984 McDonough case, have said that the doctrine of implied bias is questionable, clearly a number of courts, if not the majority of circuit courts, find that McDonough did not in any way affect the concurrence in Smith. Arguably, McDonough would have confirmed that the doctrine would be viable in three circumstances, but that's not our contention. Our contention is that it's not viable in any circumstances at all, and therefore it's not clearly established federal law. But even if it were viable in those three limited circumstances, and the reason I say those limited three is because this court has said that, even if the doctrine is still viable, it is limited to the three situations that Justice O'Connor stated in her concurrence. Allegiance to the victim, even if searching for a victim is an allegiance, even in that situation, allegiance to the victim is not one of the three situations in which Justice O'Connor stated. So the allegiance to the victim situation is not clearly established federal law, even if the three exceptions are. I hope that answers your question. I understand. Well, your strong interest in establishing, in basing your position on the lack of viability of the doctrine is really not based so much on the facts of the case, but probably just an overall interest of the state in taking the law in that direction. Is that pretty much it? Well, that sounds correct, although I don't think we would need to prove that the doctrine is not viable to win this case. We just need to prove that the doctrine is not. Well, I know, but your interest in taking it a step beyond what you need to win the case is just the interest that the state would have generally, perhaps, in establishing and not having to deal with implied bias cases in the future of the Sixth Circuit. I would assume that is correct, those people above my pay grade that make that decision. Well, I know, but it's a pretty minimal interest because we don't have implied bias cases coming down the pike very often. Right. I mean, I'm just suggesting it might not be the ditch to die in. But even if this Court were to rule that the doctrine is still viable, even though the doctrine is still clearly established federal law, this Court has earlier said that it is limited to the three circumstances that Justice O'Connor mentions in her concurrence. And a number of courts have got rid of these kinds of cases. None of which exist here. None of which exist here. Even by appropriate analogy, your position is none of them are appropriately analogous to what happened here. Right. The employee of the prosecuting agency is plainly not analogous. The juror is a close relative of one of the participants in the trial or criminal transaction. Well, that's plainly not the case here. And then the juror was a witness. That's plainly not the case here. The juror wasn't a witness to anything criminal or otherwise. The search was unsuccessful, which is perhaps part of that. And then the juror could be somehow involved in the criminal transaction. The juror here wasn't involved in anything criminal, wasn't a witness. You don't consider participating in the search for a body to be some involvement in the transaction that occurred as the crime? That's correct, Your Honor. And the reason for that is that the Eighth Circuit ruled that being present when the body was found is not involvement in the criminal transaction. That's Saunders v. Norris where the county coroner was present when the body was removed from a well. Well, your opposing counsel argues that that's distinguishable because you're operating on your professional duties then versus someone who becomes involved in the criminal transaction by voluntarily seeking to assist in location of a body. That is my understanding of opposing counsel's argument. And why do you say that that just doesn't work? Because that distinction lives and dies by the voluntary allegiance rule that doesn't exist. There is no voluntary allegiance. There is no, was involved in the criminal transaction by voluntarily or voluntary involvement. It was involved in the criminal transaction. And if finding a body is not an involvement in the criminal transaction, then searching for a body and not finding it can't be an involvement in the criminal transaction. One naturally leads to the other. The idea that that's distinct somehow because there was employment involved isn't part of the test that Justice O'Connor listed. There is no voluntary involvement necessity. It's was the jury involved and the answer is no. And because of that, the... You would think even though the argument is fair that there must have been some concern by this citizen, there must have been some connection or interest that made her, I think, a woman, desire to assist in the finding of a body that that's just not a question that we look to because it's not within the narrow confines of the group of exceptions. Your Honor, there are two answers to that question. One is that's correct. Everything you said is correct. But second, the idea that there should be, there was concern or sympathy or allegiance, we don't know that. We don't know. There's nothing in the record that explains why this juror participated in the search. Because the voir dire is not in the record. And when reviewing the findings of the courts, this court is looking at clearly established federal law or an unreasonable determination of the facts based on the record. And the record doesn't include any... For all we know, a lady was walking her dog, saw a bunch of people doing something and joined in. We just don't know. The voir dire would need to be included to even get to the point of there was an allegiance or a sympathy. And the voir dire is not included, which means that the district court was not unreasonable. And that's, I'm sorry, the Ohio Appellate Court was not unreasonable. And that's what we're here to decide. I think unless there are any other questions, I think other than that, I just want to rest on this brief. Thank you, Your Honor. Thank you, Mr. Gerich. What is your best response to the argument that without the voir dire or some other evidence in the record, you're not able to make or establish the argument that there was some sort of, that there should be even implied bias? I think the best argument to that is that our reason and common sense, just as certain cases in which the U.S. Supreme Court had decided, commonsensically, two deputies being sequestered jurors is plainly unfair. A jury hearing a verdict of someone's guilt and then yet deciding a case. So I would suggest to this court that this situation here, where you have a juror who volunteered in a participation in a search of the victim in this case, is one of those cases that fits in that purview. That their allegiance or connection to this case was manifested in an overt act. So there's no dispute as to the overt act of this particular juror actually searching for the victim. I know that the government is suggesting that, well, we don't know if she's walking the dog. I think it's clear enough what happened. Just as in the other cases, it was clear enough that you had the deputies that were in the presence of those sequestered jurors. We believe that this instance, you don't need that backing from the record about how intensive did she search. Did she search for nine days or did she search for five days? The mere fact that she participated for the benefit of the family to find the alleged victim in this case is that type of manifestation that we believe that causes. The implication, the conclusive implication of bias. That's correct. Thank you. And I think in closing here, I think that there have been other litany of cases of this implied bias doctrine. And I think that when you look at change of venue cases, change of venue cases in which they're looking for a jury that's fair and impartial, that that was paramount in certain instances that it was clear that a conviction should not lie. With regard to the clearly established federal law in this case, I think that even though that there has been some discussion and healthy debate whether or not the applicability of the implied doctrine exists, I think that it's clear from the U.S. Supreme Court cases that it is alive and well. It may be on some question or some challenge, but we believe that it is established federal law. Thank you. Okay. Thank you, Mr. Watson and Mr. Karrasch, for your arguments today. We really do appreciate them. The case will be submitted, and you may call the final argued case of the day.